```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Federal Deposit Insurance      :
Corporation as Receiver of
Washington Mutual Bank,        :

      Plaintiff,              :

   v.                           :    Case No. 2:09-cv-436

V. Jennine Graham, et al.,     :    JUDGE SMITH

      Defendants.             :

## OPINION AND ORDER

This foreclosure action is before the Court on the amended motion for substitution of plaintiff filed by LaSalle Bank, N.A., as Trustee of the Washington Mutual Pass-Through Certificates WMALT Series 2006-5 Trust.  The motion has been fully briefed and LaSalle has filed supplemental information as directed by the Court.  For the following reasons, the amended motion for substitution (#33) will be denied.

### I. Background

#### A. Procedural History of the Case

This foreclosure action was originally filed in the Franklin County Court of Common Pleas by Washington Mutual Bank and LaSalle, in its capacity as Trustee of the Trust.  According to the complaint, Ms. Graham's mortgage loan is part of a pool of mortgage loans owned by the Trust.  See Complaint (Doc. #5) at ¶2.  Further, under the terms of a Pooling and Servicing Agreement, Washington Mutual, as the designated Servicer, was "expressly authorized and required to collect payments due on the mortgage loans, and, in the event of default, to enforce the terms of the defaulted mortgage loans owned by the Trust, including initiating and prosecuting foreclosure actions."  Id. at ¶4.

Subsequently, Washington Mutual was closed and the Federal Deposit Insurance Corp. was appointed as receiver, eventually becoming successor, to Washington Mutual.  The FDIC removed the case to this Court.  Ms. Graham filed a counterclaim asserting various causes of action including fraud, violations of the Truth-In-Lending Act, and RESPA violations, among others. Further, Ms. Graham filed a third-party complaint against Premier Mortgage Lending, American Title Solutions, and Buckeye Title Services.

Sometime following the removal, LaSalle resigned as Trustee and was replaced by U.S. Bank National Association.  LaSalle originally moved to substitute U.S. Bank as plaintiff on June 7, 2010.  That motion was denied without prejudice because it was filed without evidence of compliance with Local Civil Rule 7.3, however, not before U.S. Bank, apparently anticipating a routine granting of the motion, filed an answer to the counterclaim. LaSalle did not file its amended motion for substitution, the subject of this order, until July 29, 2010.  In between those dates, Ms. Graham voluntarily dismissed her counterclaim against the FDIC and LaSalle and her third-party complaint against Premier, Buckeye Title, and American Title.  Further, the parties have stipulated to the dismissal of the FDIC-Receiver's claims against Ms. Graham.  Consequently, the remaining parties to this action are LaSalle, as Trustee, and Ms. Graham.

    B. <u>The Amended Motion for Substitution</u>

Through its motion, LaSalle seeks to substitute U.S. Bank, as Trustee of the Washington Mutual Pass-Through Certificates WMALT Series 2006-5 Trust, as the plaintiff in this action. LaSalle has attached a notice from U.S. Bank as Exhibit 1 to the motion.  This notice states, in relevant part, as follows:

> Reference is hereby made to the Pooling and Servicing Agreement, dated as of June 1, 2006 (the "<u>Agreement</u>"), by and among WaMu Asset

> Acceptance Corp., as depositor, JPMorgan
> Chase Bank, National Association, acquirer
> of certain assets of Washington Mutual Bank,
> as servicer (the "Servicer"), Christiana Bank
> & Trust Company, as Delaware trustee, and Bank
> of America, N.A., successor by merger to
> LaSalle Bank National Association ("Bank
> of America"), as trustee for the Washington
> Mutual Mortgage Pass-Through Certificates,
> WMALT Series 2006-5 Trust.  Capitalized terms
> used but not defined herein shall have the
> respective meanings assigned thereto in the
> Agreement.
>
> Pursuant to Section 8.08 of the Agreement,
> notice is hereby provided that Bank of America
> has resigned as Trustee and the Servicer has
> appointed U.S. Bank National Association
> ("U.S. Bank") to act as successor Trustee,
> pursuant to Section 8.07 of the Agreement.
> As successor Trustee, U.S. Bank will make
> available each month the Distribution Date
> statement on its website, located at
> www.usbank.com/mbs.

Ms. Graham has consistently opposed the proposed substitution.  Initially, she asserted that this notice does not provide sufficient proof that U.S. Bank is the proper party plaintiff because the notice is not properly authenticated and does not include a copy of the referenced Pooling and Servicing Agreement.  Ms. Graham argued that, absent a copy of this Agreement, there is no evidence demonstrating (1) whether the Trustee is the lawful owner of her note and mortgage, (2) whether the Servicer has the power to appoint a new Trustee, (3) whether the Trustee has the power to bring a lawsuit on behalf of the Trust, or (4) whether her note and mortgage are part of the Trust.

In light of Ms. Graham's opposition, the Court, by order dated September 23, 2010, held in abeyance its ruling on the amended motion pending LaSalle's submission of additional

information.  See Order, Doc. No. 38.  LaSalle submitted additional information on October 7, 2010, and, in accordance with the Court's order, Ms. Graham filed her response on October 20, 2010.  Consequently, the amended motion for substitution is now ripe for decision.

   II.  The Additional Information and Ms. Graham's Response

The additional information filed by LaSalle includes affidavits with attached exhibits from G. Renee Robinson, Operations Manager with Chase Home Finance and Brittany Griggs, counsel for LaSalle.  According to Ms. Robinson's affidavit, Chase is the current servicing agent for Ms. Graham's loan at issue here.  Affidavit of G. Renee Robinson, Doc. 40-1, at ¶2.  As Operations Manager, Ms. Robinson has reviewed "the documents concerning the Pooling and Servicing of the Loan and the designation of the Trustee for the Trust that owns the Loan...." Id. at ¶3.  Further, Ms. Graham's loan is currently held in the Washington Mutual Pass-Through Certificates WMALT Series 2006-5 Trust.  Id. at ¶4.  Ms. Robinson has attached to her affidavit as Exhibit A a true and accurate copy of the Pooling and Servicing Agreement for the Trust and as Exhibit B a true and accurate copy of the notice of appointment of U.S. Bank National Association as the successor trustee.  Id. at ¶¶5-6.  According to Ms. Griggs' affidavit, she also has attached a true and accurate copy of the Pooling and Servicing Agreement.

In response to this additional information, Ms. Graham seems to have refined her opposition, now arguing that U.S. Bank, as Trustee, is not the proper party plaintiff here.  In making this argument, Ms. Graham relies upon language found in Article III, Section 3.01 of the Pooling and Servicing Agreement, which states that the Servicer (either Chase Home Finance according to Ms. Robinson's affidavit, or JPMorgan Chase Bank, National Association, according to the notice) is the

party with the authority to bring actions on behalf of the Trust to enforce the terms of the mortgage notes.  Further, Ms. Graham highlights language found in Article VIII, Section 8.01 which states that the Trustee may "perform such duties and only such duties as are specifically set forth in this Agreement." Reading these sections together, Ms. Graham contends that, under the terms of the Pooling and Servicing Agreement, the Trustee does not have the power to bring legal actions on behalf of the Trust to enforce the terms of the mortgage notes, and therefore, cannot be the proper party plaintiff in this action.

Additionally, Ms. Graham argues that LaSalle's motion should be denied because Ms. Robinson's affidavit is unreliable. Alternatively, Ms. Graham asserts that, in light of Chase's recent public admissions regarding its affidavit preparation and signature process, the case should be stayed pending a review of Ms. Robinsons's affidavit by Chase's outside counsel to ensure compliance with documentary and evidentiary standards.  LaSalle has not responded to any of these arguments.

### III.  Discussion

Initially, the Court notes that it is not persuaded by Ms. Graham's suggestion that LaSalle's motion must be denied or this action must be stayed because of reliability issues surrounding Ms. Robinson's affidavit.  To the extent that the Court could consider newspaper articles submitted by Ms. Graham as reliable evidence, they do not, standing alone, support the conclusion that Ms. Robinson did not have personal knowledge or complete an appropriate review as to the information provided in her affidavit.  Moreover, the affidavit signed by Ms. Robinson is directed to a specific issue in this specific foreclosure case which differentiates it from the affidavits referred to by Ms. Graham.  Consequently, the amended motion for substitution will not be denied on this ground.

With respect to Ms. Graham's remaining argument, while framed in terms of whether the Trustee is the proper party plaintiff, the question presented is whether the Trustee is the real party in interest as required by Fed.R.Civ.P. 17. Rule 17(a)(1) states that "[a]n action must be prosecuted in the name of the real party in interest." The purpose of this rule is "'to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" Greer v. O'Dell, 305 F.3d 1297, 1303 (11th Cir. 2002) quoting Comments to 1966 Amendment to Fed.R.Civ.P. 17. Further, Rule 17(a) is designed "to protect individuals from harassment of suits by persons who do not have the power to make final and binding decisions concerning prosecution, compromise and settlement.... An action may not necessarily be brought in the name of the person who ultimately will benefit from recovery, but rather *by the person who is entitled to enforce the right*." Id. (internal citations omitted); see also In re Woodberry, 383 B.R. 373, 379 (Bktcy. D.S.C. 2008)(real party in interest "'has the legal right which is sought to be enforced or is the party entitled to bring suit.'") In order to determine whether the Trustee is the party entitled to enforce the right at issue here - or more precisely, to pursue this foreclosure action - the Court will look to the language of the Pooling and Servicing Agreement.

Briefly, as discussed above, Ms. Graham's note and mortgage are included in a pool of mortgage loans owned by the Washington Mutual Pass-Through Certificates WMALT Series 2006-5 Trust Trust. The Pooling and Servicing Agreement was entered into by WaMu Asset Acceptance Corp., as depositor, Washington Mutual Bank as Servicer, and plaintiff LaSalle Bank National Association as Trustee. Pursuant to the Agreement, WaMu, the

owner of certain mortgage loans and other property, conveyed this property to the Trust.  See Pooling and Servicing Agreement, p. 1.  Under the terms of the Agreement, the assets of the Trust are to remain in the custody of the Trustee on behalf of the Trust but are owned by the Trust.  Id. at Article II, Section 2.01.  The Agreement further provides that "[l]egal title of all assets of the Trust shall be vested at all times in the Trust as a separate legal entity."  Id. at Section 2.17.

However, the Pooling and Servicing Agreement also contains a significant delegation of power and authority to the Servicer with respect to the handling of the mortgage loans.  For example, Section 3.01 grants the Servicer "full power and authority" to collect mortgage payments and to bring or defend actions on behalf of the Trust to enforce the terms of the mortgage notes.  Further, Sections 3.06 and 3.07 require the Servicer to ensure that primary and hazard insurance policies are in effect with respect to the mortgage loans.  Under Section 3.08, prior to any conveyance of any mortgaged property, the Servicer is authorized to enforce any due-on-sale clause or enter an assumption and modification agreement with the person to whom such property is to be conveyed.  Additionally, Section 3.09 authorizes the Servicer to foreclose or settle for an amount less than the principal balance in lieu of foreclosure.  Finally, Section 3.11 provides that the Servicer is entitled to compensation including, in part, any servicing fees and payoff interest, prepayment penalties, late charges, non-sufficient funds fees, and other fees and charges collected on the mortgage loans.

On the other hand, the Trustee's obligation with respect to these activities relating to the mortgage loans is to execute any documents necessary to allow the Servicer to proceed.  Sections 3.01 and 3.10.  Additionally, under Section 7.01 the

Trustee's power to terminate the Servicer's rights and obligations is limited to specific events of default. Similarly, it is only upon these specific events of default or the Servicer's resignation that the Trustee becomes "the successor in all respects to the Servicer" with respect to the mortgage loans pending the appointment of any successor Servicer. Section 7.02(a).

In this regard, the provisions of the Pooling and Servicing Agreement in this case are similar to those before the court in CWCapital Asset Management, LLC v. Chicago Properties, LLC, 610 F.3d 497 (7th Cir. 2010). In that case, the court found that the governing pooling and servicing agreement contained such "comprehensive" delegations of authority that the mortgage servicer "effectively [held] equitable ownership of the claim" and the trust merely held "the bare legal title." Id. at 501. As explained by the court "the servicer is much like an assignee for collection, who must render to the assignor the money collected by the assignee's suit on his own behalf (minus the assignee's fee) but can sue in his own name without violating Rule 17(a)." Id. at 500-501. In light of the extensive delegation of authority, the CWCapital court believed that the mortgage servicer was the real party in interest.

A similar result is appropriate here. In light of the provisions of the Pooling and Servicing Agreement, the Court concludes that the Servicer, not the Trustee, is the real party in interest in this foreclosure action. As detailed above, under the terms of the Agreement, with respect to the mortgage loans it is the Servicer who has the power to sue on behalf of the Trust, pursue foreclosure, or settle claims in lieu of foreclosure. The Trustee's role is to execute the documents necessary to enable the Servicer to pursue any such actions. Further, the Trustee does not have the power to suspend or

remove the Servicer absent specifically defined events of default.  Given this delegation of power, the Trustee can be characterized as a nominal trustee lacking any power or obligation to sue on behalf of the Trust with respect to the mortgage loans absent a specific event of default by the Servicer.  Consequently, the amended motion for substitution will be denied.

## IV.  Disposition

Based on the foregoing, the amended motion for substitution (#33) is denied.  Further, the motion to clarify (#39) is denied as moot.  The Court recognizes that, under the rationale set forth in this order, the current plaintiff also has no standing to pursue this case, and it invites the parties to address the issue in the context of a supplemental motion to dismiss should this order be affirmed after objections, or should no objections be filed.

## V. Procedure for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

```
                                    /s/ Terence P. Kemp
                                    United States Magistrate Judge
```