IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Federal Deposit Insurance         :
Corporation as Receiver of
Washington Mutual Bank,           :

        Plaintiff,                :

    v.                            :    Case No. 2:09-cv-436

V. Jennine Graham, et al.,        :    JUDGE GEORGE C. SMITH
                                       Magistrate Judge Kemp
        Defendants.               :


OPINION AND ORDER

     This foreclosure action is before the Court on the motion
for reconsideration, pursuant to 28 U.S.C. §636(b)(1)(A) and
Fed.R.Civ.P. 72(a), filed by LaSalle Bank, N.A., as Trustee of
the Washington Mutual Pass-Through Certificates WMALT Series
2006-5 Trust (LaSalle). LaSalle has moved for reconsideration of
the order issued by the Magistrate Judge on December 14, 2010,
denying LaSalle's amended motion to substitute U.S. Bank National
Association (U.S. Bank) as the plaintiff in this case. The
motion has been fully briefed. For the following reasons, the
motion for reconsideration (#47) will be denied.

I.  Standard of Review

     Fed.R.Civ.P. 72(a) provides that a party must serve and file
objections to a Magistrate Judge's order within fourteen days
after being served with a copy of the order. Because the
Magistrate Judge's order involves nondispositive matters, this
Court's reconsideration of the order is governed by the "clearly
erroneous or contrary to law" standard of review contained in
Rule 72(a). See United States v. Curtis, 237 F.3d 598, 603 (6th
Cir. 2001). The "clearly erroneous" standard applies to factual
findings made by the Magistrate Judge while legal conclusions are
reviewed "under the more lenient 'contrary to law' standard."

<u>Gandee v. Glaser</u>, 785 F.Supp. 684, 686 (S.D. Ohio 1992), <u>aff'd</u>, 19 F.3d 1432 (6th Cir. 1994)(table).  A finding is "clearly erroneous" only when the reviewing court is left with the definite and firm conviction that a mistake has been made.  <u>See In re Search Warrants Issued Aug. 29, 1994</u>, 889 F.Supp. 296, 298 (S.D. Ohio 1995)(citations omitted).  A court's review under the "contrary to law" standard is "plenary, ... and 'it may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent.'"  <u>Gandee</u>, 785 F.Supp at 686 (citations omitted).  It is with these standards in mind that the motion for reconsideration will be decided.

## II.  <u>Procedural Background</u>

The Magistrate Judge set forth the procedural history of this case as follows.

> This foreclosure action was originally filed in the Franklin County Court of Common Pleas by Washington Mutual Bank and LaSalle, in its capacity as Trustee of the Trust.  According to the complaint, Ms. Graham's mortgage loan is part of a pool of mortgage loans owned by the Trust.  <u>See</u> Complaint (Doc. #5) at ¶2.  Further, under the terms of a Pooling and Servicing Agreement, Washington Mutual, as the designated Servicer, was "expressly authorized and required to collect payments due on the mortgage loans, and, in the event of default, to enforce the terms of the defaulted mortgage loans owned by the Trust, including initiating and prosecuting foreclosure actions."  <u>Id</u>. at ¶4.
>
> Subsequently, Washington Mutual was closed and the Federal Deposit Insurance Corp. was appointed as receiver, eventually becoming successor, to Washington Mutual.  The FDIC removed the case to this Court.  Ms. Graham filed a counterclaim asserting various causes of action including fraud, violations of the Truth-In-Lending Act, and RESPA violations, among others.  Further, Ms. Graham filed a third-party complaint against Premier Mortgage Lending, American Title

Solutions, and Buckeye Title Services.

Sometime following the removal, LaSalle resigned as Trustee and was replaced by U.S. Bank National Association. LaSalle originally moved to substitute U.S. Bank as plaintiff on June 7, 2010. That motion was denied without prejudice because it was filed without evidence of compliance with Local Civil Rule 7.3, however, not before U.S. Bank, apparently anticipating a routine granting of the motion, filed an answer to the counterclaim. LaSalle did not file its amended motion for substitution, the subject of this order, until July 29, 2010. In between those dates, Ms. Graham voluntarily dismissed her counterclaim against the FDIC and LaSalle and her third-party complaint against Premier, Buckeye Title, and American Title. Further, the parties have stipulated to the dismissal of the FDIC-Receiver's claims against Ms. Graham. Consequently, the remaining parties to this action are LaSalle, as Trustee, and Ms. Graham.

Opinion and Order, Doc. #44, at 1-2.

### III.  The Magistrate Judge's Order

Briefly, by way of background, in support of its cursory amended motion for substitution, LaSalle submitted a notice from U.S. Bank indicating that U.S. Bank had been appointed successor trustee by the Servicer. Ms. Graham opposed the amendment on grounds that the authenticity of the notice had not been established and because LaSalle had not provided a copy of the Pooling and Servicing Agreement for the Trust referenced in the notice. The Magistrate Judge held in abeyance the ruling on the amended motion pending LaSalle's submission of additional information, including a copy of the Agreement. LaSalle provided the additional information as ordered but offered no argument in response to Ms. Graham's memorandum contra. Following LaSalle's submission of the additional information, Ms. Graham argued that, under the terms of the Agreement, U.S. Bank, as Trustee, is not the proper party plaintiff here.

-3-

The Magistrate Judge construed Ms. Graham's argument to be that the Trustee is not the real party in interest in this case as required by Fed.R.Civ.P. 17.  In addressing this issue, the Magistrate Judge looked to the terms of the Pooling and Servicing Agreement in light of the purpose behind Rule 17.  The Magistrate Judge discussed in detail the "significant delegation of power and authority to the Servicer with respect to the handling of the mortgage loans" contained in the Agreement.  See Opinion and Order, p. 7.  Based upon the various provisions of the Agreement, including specifically §3.01, the Magistrate Judge concluded that "it is the Servicer who has the power to sue on behalf of the Trust, pursue foreclosure, or settle claims in lieu of foreclosure." Id. at 8.  Consequently, the Magistrate Judge held that the Servicer, not the Trustee, is the real party in interest and denied the amended motion for substitution.

In reaching this conclusion, the Magistrate Judge relied on the reasoning set forth by the court in CWCapital Asset Management, LLC v. Chicago Properties, LLC, 610 F.3d 497 (7th Cir. 2010).  In that case, the court found that the relevant pooling and servicing agreement comprehensively delegated authority to the servicer such that the servicer essentially was the equitable owner of the claim.

IV.  LaSalle's Objections

In its objection, LaSalle asserts that U.S. Bank as Trustee is the real party in interest under both Ohio law and the terms of the Pooling and Servicing Agreement.  LaSalle's argument can be summarized in two sentences.  First, the Trust is the undisputed holder of Ms. Graham's Note and Mortgage and, under Ohio law, is the real party in interest in a foreclosure action. Alternatively, under the terms of the Agreement, the Trustee holds the Note and Mortgage on behalf of the Trust, so it is the real party in interest according to the Agreement itself. Neither of these assertions is correct.

-4-

According to LaSalle, the Pooling and Servicing Agreement requires that foreclosures be brought in the name of the Trust. LaSalle points to language found in §2.03(viii) which states that the Trust must "conduct business solely in the name of the Trust." Further, LaSalle relies on language found in 8.02(v) which authorizes the Trustee to execute the Trust or any powers of the Trust either directly or "through agents or attorneys selected by it ... or ... designated by the Servicer." Under LaSalle's interpretation of this language, when any actions are to be taken on the Trust's behalf, the Trustee is "the properly named party to execute those powers." <u>See</u> Objections, Doc. #47, at 5.

LaSalle disputes that, under the Agreement, the Servicer is authorized to foreclose in its own name or on its own behalf. Rather, LaSalle argues that when §3.01 is read in conjunction with §2.03 and §8.02, the terms of the Agreement require that the Servicer bring a foreclosure action in the name of the Trust by and through the Trustee. To the extent that the Magistrate Judge relied on the court's reasoning in <u>CWCapital</u> to hold otherwise, LaSalle claims that court's reasoning should be limited by the terms of the agreement at issue in that case.

Finally, LaSalle maintains that, given all of the above, under the terms of the Agreement, the Trust is authorized "to appear as the plaintiff in foreclosure cases." <u>See</u> Objections, at 7. LaSalle also notes the "broad" grant of powers to the Trust found in the Agreement at §2.01(i) and (iv) supports this conclusion. Under these provisions, LaSalle contends that foreclosure is an authorized activity of the Trust in accordance with its power to "control, manage, and administer the Mortgage Pool Assets." <u>Id</u>. Further, the Trust's appearance in this action is "'necessary, suitable [and] convenient' to assist the Servicer in bringing actions to defend the Mortgage Pool Assets.

In her succinct response, Ms. Graham contends that the

-5-

Agreement authorizes the Servicer to foreclose.  Further, she
argues that the Trustee is a party to the Agreement and, as a
result, is bound by its terms.  Consequently, she asserts that
the Trustee is not the real party in interest.  In reply, LaSalle
argues that Ms. Graham has misinterpreted the Agreement and
disregarded Ohio law.

V.  <u>Analysis</u>

Initially, the Court notes that this case is before it
pursuant to 12 U.S.C. §1819(b)(2) which "deems suits to which the
FDIC is a party to arise under federal law...." <u>Village of
Oakwood v. State Bank and Trust Company</u>, 481 F.3d 364, 368 (6th
Cir. 2007).  Section 1819(b)(2) states that "'all suits of a
civil nature at common law or in equity in which the Corporation
[FDIC], in any capacity, is a party shall be deemed to arise
under the laws of the United States.'" <u>Id</u>.  Consequently, "if the
FDIC is a party to an action within the meaning of §1819, the
district court has federal-question jurisdiction under 28 U.S.C.
§1331." <u>Id</u>.

When a court exercising federal-question jurisdiction is
required to determine the real party in interest, a distinction
must be made between federal statutes creating a substantive
right of action and those that simply provide a federal forum or
remedy.  6A Wright, Miller & Kane, <u>Federal Practice & Procedure</u>
§1544 (3d ed. 2010).  In an action under a statute that only
provides a federal forum, the court, "as it does in diversity
actions, will look to state law to determine if the party
actually possesses a substantive claim for relief and is the real
party in interest." <u>Id</u>., <u>citing</u> <u>U.S. for Use & Benefit of Allen
Const. Corp. v. Verrier</u>, 179 F.Supp. 336, 340 (D. Me. 1959).

As set forth by the Magistrate Judge, Rule 17(a)(1) provides
that "[a]n action must be prosecuted in the name of the real
party in interest."  This language is interpreted to mean "that

-6-

the real party in interest is the person who is entitled to
enforce the right asserted under the governing substantive law." Certain Interested Underwriters at Lloyd's, London, England v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994); see also 6A Wright, Miller & Kane, Federal Practice & Procedure §1543 (3d ed. 2010). Further, the purpose of this rule is "'to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" Greer v. O'Dell, 305 F.3d 1297, 1303 (11th Cir. 2002) quoting Comments to 1966 Amendment to Fed.R.Civ.P. 17. Further, Rule 17(a) is designed "to protect individuals from harassment of suits by persons who do not have the power to make final and binding decisions concerning prosecution, compromise and settlement.... An action may not necessarily be brought in the name of the person who ultimately will benefit from recovery, but rather *by the person who is entitled to enforce the right*." Id. (internal citations omitted); see also In re Woodberry, 383 B.R. 373, 379 (Bktcy. D.S.C. 2008)(real party in interest "'has the legal right which is sought to be enforced or is the party entitled to bring suit'").

As explained above, in order to apply Rule 17(a)(1) properly, a court is required to identify the law that created the substantive right being asserted by the plaintiff. See Wright, Miller & Kane, Federal Practice & Procedure §1543 (3d ed. 2010). To this end, "the list in Rule 17(a) is not meant to be exhaustive and anyone possessing the right to enforce a particular claim is a real party in interest even if that party is not expressly identified in the rule." Id. Rather, "a federal court will allow the claim to be asserted by [a] plaintiff who has a substantive right under state law." Id. at §1544.

-7-

LaSalle argues that because, under Ohio law, the current holder of the note and mortgage is considered to be the real party in interest in a mortgage foreclosure action, see, e.g., Deutsche Bank Natl. Trust Co. v. Sexton, 2010 WL 3836131 (Ohio 12th Dist. Oct. 4, 2010), the Court must conclude that the Trustee on behalf of the Trust (the current holder of the note and mortgage) is the real party in interest here. However, this assertion is inconsistent with the purpose of Rule 17(a) discussed above. Under the terms of the Agreement, as discussed in great detail by the Magistrate Judge, the power to sue on behalf of the Trust, pursue foreclosure, or settle claims in lieu of foreclosure, has been delegated specifically to the Servicer. Stated another way, under the terms of the Agreement, it is the Servicer who "has the legal right which is sought to be enforced or is the party entitled to bring suit" in this foreclosure action. In short, under the circumstances of this case, the Servicer's substantive right to bring the foreclosure action has been created by a contract governed by basic contract law and not by Ohio foreclosure law.

In light of this, some brief discussion of the underlying contract law is in order. According to its terms, the Agreement is governed by Delaware law. See Pooling and Servicing Agreement §10.05. Under Delaware law, "[t]he primary consideration in interpreting a contract is to 'attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted.'" Official Committee of Unsecured Creditors of Apex Global Information Services, Inc. v. Qwest Communications Corp., 405 B.R. 234, 245 (E.D. Mich. 2009) quoting Comrie v. Enterasys Networks, Inc., 837 A.2d 1, 13 (Del. Ch. 2003). Further, in determining intent, Delaware courts apply the "'objective' theory of contracts." Id. citing Haft v. Haft, 671 A.2d 413, 417 (Del.Ch. 1995). Under this theory, "a contract's 'construction should be that which would be understood by an

-8-

objective reasonable third party.'" <u>Id</u>. <u>quoting</u> <u>R.E. Haight &</u>
<u>Assocs. v. W.B. Venables & Sons, Inc.</u>, C.A. No. 94C-11-023, 1996
Del.Super. Lexis 445, 1996 WL 658969, at *3 (Del.Super.Ct. Oct.
30, 1996).

The focus of LaSalle's objection is that the Magistrate
Judge interpreted the Agreement incorrectly in concluding that it
contained such an extensive delegation of authority for pursuing
foreclosure to the Servicer as to make the Servicer the real
party in interest in this case under Rule 17.  In terms of
Delaware contract law, LaSalle essentially is arguing that the
Magistrate Judge construed the Agreement in a way different than
would be understood by an objective reasonable third party.
LaSalle contends that the proper reading of the Agreement is that
foreclosure actions must be brought in the name of the Trust
through the Trustee.

The Court does not agree with LaSalle's interpretation.
Rather, a review of the complaint in this case supports the
Magistrate Judge's reading of the Agreement.  Specifically, when
this case was originally filed, the complaint named two
plaintiffs - Washington Mutual Bank, and LaSalle Bank National
Association as Trustee of the Washington Mutual Pass-Through
Certificates WMALT Series 2006-5 Trust.  Washington Mutual Bank
was named as a plaintiff in its own name, without any designation
that it was acting on behalf of the Trust.  Further, the
complaint, at paragraph 4, contains the following allegation:

> "Washington Mutual is the designated servicer of
> the mortgage loans in the Trust under a pooling
> and servicing agreement ("PSA") with LaSalle Bank
> and others.  Under the PSA, Washington Mutual is
> expressly authorized and required to collect
> payments due on the mortgage loans and, in the
> event of default, to enforce the terms of the
> defaulted mortgage loans owned by the Trust,
> including initiating and prosecuting foreclosure
> actions."

The naming of Washington Mutual Bank as a plaintiff in its own name and the allegations in the complaint regarding the Servicer's authority are fully consistent with the express terms of the Agreement. Further, this serves to confirm the Magistrate Judge's reading of the Agreement. There is no question that LaSalle is bound by the terms of the contract it signed. See West Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC, 2007 WL 3317551, *9 (Del. Ch. Nov. 2, 2007) citing Graham v. State Farm Mut. Auto Ins. Co., 565 A.2d 908, 913 (Del. 1989).

In summary, as the complaint clearly alleges, under the terms of the Agreement, the Servicer is the party "authorized and required" to pursue foreclosure activities and, therefore, is the real party in interest in this case as contemplated by Rule 17. The Magistrate Judge's interpretation of the Agreement in this regard is not contrary to law. Consequently, LaSalle's objections will be overruled and the motion for reconsideration will be denied.

This brings the Court to an additional matter in need of resolution. LaSalle has requested that, if its motion for reconsideration is denied, it be granted leave to obtain ratification from, join or substitute, the real party in interest pursuant to Rule 17(a)(3). Ms. Graham has neither addressed nor opposed this request in her response to LaSalle's objections.

However, prior to the filing of the amended motion to substitute, Ms. Graham had filed a motion to dismiss pursuant to Rule 17 (#31) asserting that this case should be dismissed for failure to prosecute in the name of the real party in interest. That short motion appears to have been prompted by the lapse in time between the filing of LaSalle's original motion to substitute U.S. Bank and the filing of its amended motion. However, in her reply, Ms. Graham raised some of the same arguments she raised in challenging U.S. Bank's status as a proper plaintiff in response to the amended motion to substitute.

-10-

Rule 17(a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

According to the advisory committee's notes to Rule 17, "[m]odern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed.... The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made...." See also Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach., Inc., 2006 WL 89867, *3 (E.D. Mich. Jan. 13, 2006). In deciding whether to allow ratification, joinder, or substitution under Rule 17, courts consider "whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay, or undue prejudice to the non-moving party." Tool-Plas Systems, Inc. v. Camaco, LLC, 2010 WL 1347686, *2 (E.D. Mich. March 31, 2010).

Technically, under this rule, leave of court is not required. Wiwa v. Royal Dutch Petroleum Co., 2009 WL 464946 (S.D.N.Y. Feb. 25, 2009). Rather, the rule requires that the real party in interest act to pursue ratification, joinder, or substitution within a "reasonable time." Id. What constitutes a reasonable time is within the Court's discretion. Suda v. Weiler Corp., 250 F.R.D. 437 (D.N.D. 2008); see also 6A Wright, Miller & Kane, Federal Practice & Procedure §1555 (3d ed. 2010). Courts consider the concept of reasonable time within the context of the specific facts of each case. See Wright, Miller & Kane at §1555;

-11-

see, e.g., Rodriguez v. Mustang Mfg. Co., 2008 WL 2605471, *3
(E.D. Mich. June 27, 2008) (one month constitutes a reasonable
time under circumstances of products liability action following
plaintiff's bankruptcy); In re Vivendi Universal, S.A. Securities
Litigation, 605 F.Supp.2d 570 (S.D.N.Y. 2009)(30 days reasonable
in shareholder action against publicly-traded French
corporation).

    As set forth above, through its amended motion to
substitute, LaSalle sought to substitute a party other than the
real party in interest.  However, there is no indication from the
record that in doing so LaSalle was engaged in any tactical
maneuvering or that it was seeking to delay unreasonably the
resolution of this action.  Further, Ms. Graham has not suggested
any undue prejudice she will suffer if LaSalle is afforded
additional time to substitute or join the real party in interest.
In light of this, the Court finds that LaSalle should be afforded
some additional time under Rule 17(a)(3).  Because this case, in
its current posture, is not particularly complicated and has been
pending for some time, the Court finds fourteen days to be a
reasonable length of time.  Ms. Graham's motion to dismiss will
be held in abeyance during this time pending LaSalle's selection
of an appropriate course of action to comply with the
requirements of Rule 17.

                    VI.  Disposition

    For all of the above reasons, the motion for reconsideration
(#47) is DENIED and the Magistrate Judge's order denying the
amended motion to substitute is AFFIRMED.  LaSalle shall have
fourteen days to comply with Fed.R.Civ.P. 17(a)(3).  The motion
to dismiss (#31) is held in abeyance pending LaSalle's selected
course of action.

    IT IS SO ORDERED.

                        -12-

/s/ George C. Smith
George C. Smith
United States District Judge